UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

* * * * * * * * * * * * * * * * * *

James R. Poole,

           Petitioner,

vs.                           REPORT AND RECOMMENDATION

Dean Mooney, Director
of the Minnesota Sex
Offender Program

           Respondent.       Civ. No. 05-1138 (MJD/RLE)

* * * * * * * * * * * * * * * * * *

I. Introduction

This matter came before the undersigned United States Magistrate Judge pursuant to a general assignment, made in accordance with the provisions of Title 28 U.S.C. §636(b)(1)(B), upon a Petition for a Writ of Habeas Corpus, see, Title 28 U.S.C. §2254, which alleges that the Petitioner is being illegally detained, by the Respondent, for reasons which violate his rights under the Constitution, laws, or Treaties of the State of Minnesota, and of the United States. The Petitioner has appeared pro se, and the Respondent has appeared by Angela M. Helseth, Assistant

Minnesota Attorney General. For reasons which follow, we recommend that the Petition be denied as untimely.

## II. Factual and Procedural Background

The Petitioner is currently confined for treatment, and for public protection, at the Minnesota Sex Offender Program, in Moose Lake, Minnesota, pursuant to a civil commitment. The Petitioner was civilly committed, as a Sexual Psychopathic Personality ("SPP"), and as a Sexually Dangerous Person, in accordance with Minnesota Statutes Section 253B.02, Subdivisions 18b, and 18c (1998), on November 18, 1999. See, Respondent's Appendix ("RA"), at 50-51. He appealed his initial civil commitment, but the commitment was affirmed by the Minnesota Court of Appeals. See, In re Poole, No. C4-00-85, C8-00-171, 2000 WL 781381 (Minn. App., June 20, 2000), rev. denied (Minn., August 15, 2000). On March 14, 2000, the Trial Court ordered that the Petitioner be indeterminately committed.[1] RA at 71-72.

---

[1] Under Minnesota's Sexual Psychopathic Personality Statute, after the Trial Court renders its initial decision to commit an individual as a SPP, the individual returns to Court, within ninety (90) days, for a review Hearing. At that time, if the person continues to meet the criteria for commitment, the commitment is made in-determinate. Minnesota Statutes Section 253B.18, Subdivisions 1 and 2; Minnesota Statutes Section 253B.185.

On August 8, 2001, the Petitioner filed a Petition with the United States District Court, for a Writ of Habeas Corpus, alleging violations of the Fifth, Sixth, Seventh, and Fourteenth Amendments to the United States Constitution. RA at 81-88; Poole v. O'Keefe, Civ. No. 01-1460, 2002 WL 550961 (D. Minn., April 10, 2002). Among his claims, the Petitioner argued that the equal protection and due process clauses required the same process for persons civilly committed in other States, including a Jury Trial, and proof beyond a reasonable doubt. RA at 85, 87. The District Court dismissed his Petition with prejudice, and that decision was affirmed by the Court of Appeals for the Eight Circuit. See, Poole v. Goodno, 335 F.3d 705 (8th Cir. 2003). In upholding the decision of the District Court, the Court of Appeals held that there was no clearly established Supreme Court precedent which required a Jury Trial under the Seventh Amendment, or the due process clause of the Fourteenth Amendment, in the context of a civil commitment proceeding. Id. at 710-11.

On September 17, 2003, the Petitioner filed a Petition with the State District Court, for a Writ of Habeas Corpus, arguing that he was entitled to a Jury Trial under the Minnesota State Constitution, and that, because no Jury Trial had been provided to him, his commitment was invalid. RA at 121-22. The Petitioner based his claim on the Minnesota Constitution, Art. I, Sec. 4. RA at 122, 125. On December 9, 2003,

the State District Court dismissed his Petition, concluding that the Minnesota Supreme Court had repeatedly rejected such a claim, and that the Petitioner was barred from raising his Jury Trial claim because it could have been raised on direct appeal. RA at 165-69. By Order dated May 5, 2004, the Minnesota Court of Appeals affirmed the District Court's dismissal. RA at 282-84. On June 15, 2004, the Minnesota Supreme Court denied review, and on December 6, 2004, the United States Supreme Court denied his Petition for Writ of Certiorari. RA at 296, 335. See, McDeid v. Mooney, 543 U.S. 1024 (2004)(concurrently denying Writ of Certiorari for eleven (11) Habeas petitioners, including the Petitioner, here).

On June 10, 2005, the Petitioner then commenced this Federal Habeas proceeding.

### III. Discussion

A. Standard of Review. On April 24, 1996, President Clinton signed the Antiterrorism and Effective Death Penalty Act ("AEDPA"), which effected significant changes in the Federal Habeas Corpus statutes. One of those changes was incorporated into Title 28 U.S.C. §2244(d), which established a new, one-year statute of limitations for Habeas Corpus Petitions, which are filed by State prisoners who seek

a Federal Court's review of a State Court conviction or sentence.  The new provision reads as follows:

> (d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a state court.  The limitation period shall run from the latest of --
>
> > (A)   the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
> >
> > (B)   the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
> >
> > (C)   the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
> >
> > (D)   the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (d)(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

Title 28 U.S.C. §2244(d).

As a consequence, a State prisoner, who seeks Federal Habeas Corpus review from his State conviction or sentence, must ordinarily file his Petition within one year after his Judgment of conviction "became final by the conclusion of direct review." Title 28 U.S.C. §2244 (d)(1). The applicability of Title 28 U.S.C. Section 2244 extends to persons held pursuant to civil commitment proceedings, as well as to persons held under criminal conviction. See, Duncan v. Walker, 533 U.S. 167, 176 (2001).

The statute provides, however, that this deadline can be modified if: 1) the prisoner is unable to file his Federal Habeas Corpus Petition in a timely manner because of an impediment that was imposed by the State; 2) the prisoner is relying on some newly recognized constitutional right that is retroactively applicable; or 3) the prisoner is relying on some new evidence which could not have been reasonably discovered in time to file a timely Petition. See, Title 28 U.S.C. §2244(d)(1)(B)-(D).

The statute of limitations also includes a tolling provision, which stops the running of the one-year limitations period while the prisoner is pursuing a "properly filed" application for Post-Conviction Relief in the State Court. See, Title 28 U.S.C. §2244(d)(2). Our Court of Appeals has expressly held, however, that the period between the completion of the direct review of the State Court Judgment, and the application for post-judgment relief, is counted towards the one-year limitation period.

See, Maghee v. Ault, 410 F.3d 473, 475 (8th Cir. 2005); Curtiss v. Mount Pleasant Correctional Facility, 338 F.3d 851, 853-55 (8th Cir. 2003); Painter v. Iowa, 247 F.3d 1255, 56 (8th Cir. 2001)("A review of our cases makes clear, however, that the time between the date that direct review of a conviction is completed, and the date that an application for state post-conviction relief is filed, counts against the one-year period.").

  B. Legal Analysis.  Under the circumstances here, the one-year statute of limitations began to run, pursuant to Section 2244(d)(1)(A), when the Petitioner's civil commitment Judgment became final.  Petitioner's civil commitment Judgment became final on November 13, 2000 -- which is ninety (90) days after the Minnesota Supreme Court denied the Petitioner's request for further review, during which period, the Petitioner could have sought a Writ of Certiorari from the United States Supreme Court.  See, Title 28 U.S.C. §2244(d)(1)(A)("The limitation period shall run from * * * the date on which the judgment became final by the conclusion of direct review **or the expiration of the time for seeking such review**.")[emphasis added]; Smith v. Bowersox, 159 F.3d 345, 348 (8th Cir. 1998), cert. denied, 525 U.S. 1187 (1999)(The running of the statute of limitations for purposes of Section 2244(d)(1)(A) is triggered by the completion or denial of certiorari proceedings before the United States Supreme

Court or, "if certiorari was not sought, then by the conclusion of all direct criminal appeals in the state system followed by the expiration of the [90 days] allowed for filing a petition for the writ.").

Accordingly, under Section 2244(d)(1) and (2), the AEDPA's one-year statute of limitations began to run on November 14, 2000. Here, the Petitioner filed a Federal Habeas Petition on August 8, 2001, and, as we have noted, the Court of Appeals for the Eighth Circuit upheld dismissal of that Petition on September 3, 2003. The Petitioner's subsequent State Habeas proceeding was dismissed by the State District Court on December 9, 2003, and that Judgment was made final on December 4, 2004, when the Supreme Court denied the Petition for a Writ of Certiorari.

Even if we toll the running of AEDPA's time limitations, beginning with the Petitioner's initial Federal Habeas proceeding, and concluding with the resolution of his subsequent State Habeas proceeding, we still find that the Petitioner's filing was untimely. We note that 266 days had elapsed between the date in which the Petitioner's commitment proceedings were made "final" on November 13, 2000, and his filing, on August 8, 2001, of his initial Federal Habeas petition. As we have previously noted, those days are counted towards the Petitioner's one-year filing deadline. See, Maghee v. Ault, supra at 475; Curtiss v. Mount Pleasant Correctional

Facility, supra at 853-55; Painter v. Iowa, supra at 1256.  In addition, we note that an additional 185 days had passed between the United States Supreme Court's denial of Certiorari on the Petitioner's State Habeas Petition on December 4, 2004, and the Petitioner's filing of his current Federal Habeas Petition on June 10, 2005.  Even if we toll the running of the AEDPA timing deadline for the entirety of the Petitioner's prior Habeas proceedings, the Petitioner's filing would only be timely if it was filed by March 14, 2005, which was 100 days after the denial of Certiorari by the United States Supreme Court.  Instead, the Petitioner waited a minimum of 451 days, from the date on which his commitment became "final," before filing his current Habeas Petition.  Accordingly, his current Petition is untimely.

Giving the Petitioner the benefit of the doubt, we assume, based on the representation in his Petition, that he is contending that the filing of his State Court Habeas Petition recommenced the one-year limitations period.  Even granting such a liberal construction to his Petition, we are unable to find any authority for the proposition he advances which, if true, would mean that the AEDPA's limitation period would be entirely defeated.  See, e.g., Jackson v. Dormire, 180 F.3d 919, 920 (8th Cir. 1999)("To allow [petitioner] to return to state court and exhaust after the one-year statutory limitations period has expired would defeat the purpose of the

Antiterrorism and Effective Death Penalty Act of 1996 to expedite federal habeas review * * *, and would lead to inequities depending upon the length of time a district court takes to rule on a motion to dismiss."); see also, Davis v. Norris, 423 F.3d 868, 878-79 (8th Cir. 2005). Moreover, such a construction would contravene the plain language of Section 2244(d)(1) and (2).

As a consequence, unless the Petitioner falls within one of the exceptions that are detailed in Section 2244(d)(1)(B), (C), or (D), his Petition should be dismissed as time-barred. Here, the Petitioner has not alluded to any State impediment to the commencement of either his State or Federal Habeas Petition, as recognized by Section 2244(d)(1)(B). Furthermore, the Petitioner has not advanced a factual predicate that was not apparent as of the date when either the direct review, or his initial State Habeas proceeding, had concluded -- namely, whether the State commitment process provided for a Jury Trial -- as that precise issue was addressed in the Petitioner's State Court Habeas Petition. Therefore, Section 2244(d)(1)(D) is inapplicable.

The only potential avenue, which is left to the Petitioner, would require a cogent showing that there is a newly recognized Constitutional right, as determined by the United States Supreme Court, which has been made retroactively applicable to future

cases on collateral review. Here, however, the Petitioner does not identify, much less rely, on any newly developed doctrine by the United States Supreme Court. Indeed, none of the Supreme Court cases, which the Petitioner has cited in his Habeas papers, involve a newly developed Supreme Court holding which relates to Jury Trials in civil commitment proceedings. The Petitioner has cited to Blakely v. Washington, 542 U.S. 296 (2004), RA at 331, but Blakely is not apposite to the Petitioner's Habeas claims.

The sum of the Petitioner's allusion to Blakely, which is contained in his Petition for Certiorari to the United States Supreme Court, is as follows:

> The Sixth amendment right to a jury trial is no mere procedural formality, but a fundamental reservation of a power in our constitutional structure. Just as suffrage ensures the people's ultimate control in the legislative and executive branches, jury trial is meant to ensure their control in the judiciary * * * The Framers [of the U.S. Constitution] would not have thought it too much to demand that, before depriving a man of * * * his liberty, the state should suffer the minor inconvenience of submitting his accusation to" a vote of his peers.

RA at 331, quoting Blakely v. Washington, supra at 305-06, 313.

However, here, the Petitioner has not identified the Sixth Amendment as a source of Habeas relief. Furthermore, the Petitioner seeks relief under Article 1, Section 4, of the Minnesota Constitution, and under the Equal Protection and Due Process clauses

of the United States Constitution.  We simply fail to see any connection between the Petitioner's stated grounds for relief, and his citation to Blakely v. Washington, supra.

Even if we were to most generously construe the Petitioner's argument as encompassing a claim under Blakely, we would still conclude that the Petitioner is not excused from the one-year period of limitations under Section 2244(d)(1)(C).  Under that provision, for the exception to apply, the newly recognized right, as enunciated by the Supreme Court, must be made retroactively applicable to cases on collateral review.  See, Title 28 U.S.C. §2244(d).  The balance of authority, as well as case law from within this District, convinces us that the exception of Section 2244(d)(1)(C) does not apply to the rule announced in Blakely.  See, United States v. Duran, 147 Fed.Appx. 625, 626, 2005 WL 2897897 (8th Cir., November 4, 2005) United States v. Stoltz, 149 Fed.Appx. 567, 569, 2005 WL 2484417 (8th Cir., October 10, 2005)("Accordingly, this court holds that Blakely does not apply retroactively to convictions or sentences on collateral review."); Schardt v. Payne, 414 F.3d 1025, 1035-37 (9th Cir. 2005)(finding that Blakely did not announce a new substantive rule, or a "watershed" procedural rule); United States v. Price, 400 F.3d 844, 848-49 (10th Cir. 2005)(same), cert. denied, --- U.S. ---, 2005 WL 3144122  (November 28, 2005); United States v. Arrington, 2005 WL 1522124 at *2 (D. Minn., June 28, 2005)(same);

Lloyd v. Caraway, 2005 WL 1330957 at *4-5 (D. Minn., June 1, 2005)(summarizing case law); Jackson v Dingle, 2005 WL 1270594 (D. Minn., May 25, 2005)(same); see also, Schiriro v. Summerlin, 542 U.S. 348, 351-56 (2004)(holding that the rule announced in Ring v. Arizona, supra, was not a substantive rule, and was not a watershed procedural rule);[2] Never Misses A Shot v. United States, 413 F.3d 781, 783 (8th Cir. 2005)(holding that the Supreme Court's decision in Booker does not apply retroactively); Verela v. United States, 400 U.S. 864, 867 (11th Cir. 2005) (same); United States v. Moss, 252 F.3d 993, 997 (8th Cir. 2001)(finding that the Supreme Court, in Apprendi, did not announce a watershed rule). Therefore, we hold that the rule announced in Blakely does not apply retroactively on collateral review, and accordingly, we find that the Petitioner may not rely on Blakely as a ground for Habeas Corpus relief. See, In re Dean, 375 F.3d 1287, 1290 (11th Cir. 2004)(Blakely does not apply retroactively on collateral review); Gutierrez v. United States, 2005 WL 1490361 at *1 (D. Minn., June 23, 2005)(same).

---

[2]The rules announced in Ring, and Blakely, parallel each other to such an extent that, at least within this District, the holding in Shiriro v. Summerlin, 542 U.S. 348, 352-55 (2004), has been found to be controlling on the question of whether Blakely applies retroactively. See, United States v. Arrington, 2005 WL 1522124 at *2 (D. Minn., June 28, 2005); Jackson v Dingle, 2005 WL 1270594 at *1 (D. Minn., May 25, 2005).

In sum, since the Petitioner did not file his Federal Habeas Petition within the statutory time-frame prescribed by Section 2244(d)(1) and (2), his Petition must be dismissed as untimely.[3]

NOW, THEREFORE, It is –

RECOMMENDED:

That the Petitioner's application for Habeas Corpus Relief under Title 28 U.S.C. §2254 [Docket No. 1] be summarily dismissed.

Dated: February 15, 2006           *s/Raymond L. Erickson*

                                            Raymond L. Erickson
                                            CHIEF U.S. MAGISTRATE JUDGE

---

[3] The Respondent also argues that the Petitioner's application for Habeas relief should be dismissed because this is his second successive Federal Habeas Petition, which was filed without permission of the Court of Appeals for the Eighth Circuit, pursuant to Title 28 U.S.C. §2244(b)(3)(A); and that he has not exhausted his State Court remedies, and that, therefore, his Petition is procedurally barred under Title 28 U.S.C. §2254, Subdivision (b)(1)(A). The Respondent additionally argues that the Petitioner's claims lack legal merit. However, since we find that Petitioner's request for Habeas relief is time-barred under 28 Title U.S.C. §2244(d)(1) and (2), we do not address either the successiveness of his Habeas Petition, exhaustion issues, or the merits of his Petition, as the untimeliness of his Petition is both fatal and irremediable.

**N O T I C E**

Pursuant to Rule 6(a), Federal Rules of Civil Procedure, D. Minn. LR1.1(f), and D. Minn. LR72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties by no later than **March 6, 2006**, a writing which specifically identifies those portions of the Report to which objections are made and the bases of those objections. Failure to comply with this procedure shall operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.

If the consideration of the objections requires a review of a transcript of a Hearing, then the party making the objections shall timely order and file a complete transcript of that Hearing **by no later than March 6, 2006**, unless all interested parties stipulate that the District Court is not required by Title 28 U.S.C. §636 to review the transcript in order to resolve all of the objections made.